UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LLOYD SHAFFER,<br><br>        Petitioner,<br><br>    v.<br><br>F. GONZALES, Warden,<br><br>        Respondent. | No. C 10-3807 SI (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a *pro se* state prisoner. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2007, petitioner was convicted by a Santa Cruz County Superior Court jury of assault to commit sex crimes and false imprisonment, consequent to which petitioner was sentenced to 9 years in state prison. Evidence at trial demonstrated that petitioner attempted to force an adult female, Danielle, to orally copulate him. As grounds for federal habeas relief, petitioner claims (1) the admission of evidence of uncharged sexual conduct and statements violated his right to

due process; (2) the jury instructions violated his right to due process by permitting the jury to find him guilty based solely upon his alleged propensity to commit such offenses; (3) the trial court's refusal to instruct the jury on self-defense violated his right to due process; (4) the denial of his motion for new trial deprived him of his right to due process; (5) defense counsel provided ineffective assistance when he failed to object to inappropriate comments by the trial court; and (6) the denial of his motion to strike a prior conviction under *People v. Superior Court (Romero)*, 13 Cal. 4th 497, 507, 530 (Cal. 1996), violated his federal due process rights.

## STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### 1. Admission of Evidence of Uncharged Conduct

Petitioner claims that the trial court's admission of evidence of uncharged offenses — a prior alleged rape and statements made to a police officer — violated his right to due process.

#### A. Prior Alleged Rape

Evidence that petitioner committed a prior sexual offense — the alleged rape of an adult female, Judith, in 1992 — was admitted at trial to show that he had a propensity to commit such offenses. Petitioner claims that the admission of such evidence violated his right to due process because it constituted impermissible character and propensity evidence. The state appellate court found the prior act evidence probative, and rejected petitioner's claim.[1]

The trial court admitted the evidence under California Evidence Code section 1108(a), which states that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101 [generally forbidding the use of character evidence to show action in conformity therewith], if the evidence is not inadmissible pursuant to Section 352 [which allows a trial court to exclude evidence if its probative value is outweighed by its prejudicial effect]."

The admission of evidence is not subject to federal habeas review unless a specific

---

[1] The state appellate court also rejected petitioner's claim that the evidence did not qualify for admission because the statute of limitations for charging him for the alleged 1992 acts had expired. To the extent that petitioner makes such claim here, the Court denies it. This Court is bound by the state appellate court's ruling that the statute of limitations did not bar admission of the evidence. A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

3

constitutional guarantee is violated or the error is of such magnitude that the result is a denial of a fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999).

Petitioner's claim cannot succeed because no remediable constitutional violation occurred. The Supreme Court has left open the question of whether admission of propensity evidence violates due process, i.e., whether a constitutional guarantee has been violated. *Estelle v. McGuire*, 502 U.S. 62, 67–71 (1991). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006). Furthermore, courts have "routinely allowed propensity evidence in sex-offense cases, even while disallowing it in other criminal prosecutions." *United States v. LeMay*, 260 F.3d 1018, 1025 (9th Cir. 2001)." "California's Rule 1108 was modeled after the Federal Rules, and contains an express requirement that courts balance the probative value of the evidence against its prejudicial effect." *Wolff v. Newland*, 67 Fed. Appx. 398 (9th Cir. 2003). In sum, because the Supreme Court expressly has left open the question presented in the petition, petitioner's claim that the trial court's admission of propensity evidence under section 1108 violated his due process rights is without merit. Accordingly, the claim is DENIED.

### B. Statements to a Police Officer

The relevant facts are as follows:

> [W]hen [petitioner] was detained at the Santa Cruz County Jail [between 1990 and 1994], he wrote letters to Corrections Officer Joanne Moore, in which he told her that he was going to beat her, have her orally copulate him, and then have sexual intercourse. He professed his love for her and said he wanted to marry her. Retired Sheriff's Sergeant Steve Hartness testified that he discussed the letters with [petitioner] at the time. [Petitioner] maintained that he loved Officer Moore and shrugged off the threat of violence against her. He said that upon his release, he intended to realize the plans outlined in his letters. Sergeant Hartness advised [petitioner] that Officer Moore was armed and had a restraining order against him.

(Ans., Ex. 7 at 5.) The state appellate court concluded that because the conduct was not

4

sufficiently similar to the later charged offenses, the trial court abused its discretion in admitting such evidence.  However, the Moore evidence was far less inflammatory than the Judith evidence, which was properly admitted, and also was cumulative "[i]nsofar as the threat [to Officer Moore] represented additional evidence of [petitioner's] criminal disposition." (*Id.* at 20.)  The state appellate court also concluded that there was "compelling direct and circumstantial evidence of guilt." (*Id.* at 21.)

Petitioner's claim cannot succeed.  First, as noted above, the Supreme Court has left open the question of whether admission of propensity evidence violates due process.  Second, even if the evidence were irrelevant or prejudicial, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Third, petitioner has not shown prejudice because, as the state appellate court concluded, the evidence was less inflammatory than the Judith evidence.  Accordingly, petitioner's claim is DENIED.

### 2.     **Jury Instructions Regarding Propensity Evidence**

In a related claim, petitioner alleges that the trial court's instructions on the use of the alleged 1992 rape — CALCRIM No. 1191 — violated his right to due process.  Such instruction, petitioner contends, allowed the jury to convict him solely on the basis of his propensity or disposition to commit such crimes.

CALCRIM 1191, as given to petitioner's jury, read as follows:

> The People presented evidence that [petitioner] committed the crimes of rape that was not charged in this case. [¶] We are talking about the testimony of [Judith]. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that [petitioner] in fact committed the uncharged offenses.  Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely.  If you decide that [petitioner] committed the uncharged offenses, you may but are not required to conclude from that evidence that the [petitioner] was disposed to or inclined to commit sexual offenses and, based on that decision, also conclude that [petitioner] was likely to commit and did commit the charged

> offense. If you conclude that [petitioner] committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that [petitioner] is guilty of the charged offense. The People must still prove each element of the charged — charge offenses beyond a reasonable doubt. Do not consider this evidence for any other purpose.

(Ans., Ex. 7 at 22.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, a federal habeas court must evaluate the jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). If the jury is not properly instructed that a defendant is presumed innocent until proven guilty beyond a reasonable doubt, the defendant has been deprived of due process. *See Middleton v. McNeil*, 541 U.S. 433, 436 (2004). Any jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted presumption of innocence." *Cool v. U.S.*, 409 U.S. 100, 104 (1972).

Petitioner has not shown that the instruction infected the trial to the extent that he was denied a fair trial under due process. First, the instructions permit, but do not require, the jury to consider evidence that petitioner committed a prior sexual offense. Because the instruction was permissive, the jury was not even required to consider such evidence, much less required to make a finding of guilt based upon it. Rather, the jury was free to accept or reject such evidence, and even if it accepted such evidence as true, to give it any weight it chose.

Second, nothing in the instructions lowered the prosecution's burden of proof. The instructions themselves state explicitly that the prior act evidence "is not sufficient by itself to prove that [petitioner] is guilty of the charged offense." The jury was also separately instructed

6

that it had to be convinced of petitioner's guilt beyond a reasonable doubt. The Court must presume that the jurors followed the instructions and applied the proper legal standard. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

### 3. Jury Instructions on Self-Defense

Petitioner claims that the trial court's refusal to instruct the jury on self-defense violated his federal rights to due process.[2] The facts of the offense relevant to this claim are as follows:

> On the evening of January 4, 2007, Danielle and some friends celebrated her roommate Jennifer's birthday at Olita's Bar and Cantina in Santa Cruz, where Danielle worked. Danielle had smoked some marijuana, and after having some drinks and dinner, she started to feel very strange. Danielle said she had about two drinks. According to Danielle, the last thing she remembered was the manager at Olita's saying she could not have more to drink.
>
> The next thing Danielle could remember was waking up very early the next morning, alone with a strange man [later identified as petitioner] in his motor home. She testified that she apologized to him for not knowing how she got there and said she was going to leave. He responded, "No" and told her she was going to orally copulate him. When she started to leave, he grabbed her, threw her on a bed, straddled her on his knees, and started tearing off her clothes. She resisted him, screamed, and tried to reach the door, but he grabbed her by the hair, repeatedly banged her head against a table, and told her to be quiet. She continued to scream at him, urinated, threw up, and finally agreed to his demand. He took her back to the bed. However, when he brought his penis toward her, she bared her teeth as if to bite, and he pulled back. She tried to escape, but he caught her by the hair and banged her head against the table. They struggled. She grabbed and started pulling and twisting his penis, but he was undeterred.
>
> At that point, [petitioner's] neighbor Joe Robinson, who was awakened by Danielle's screaming, went to [petitioner's] motor home, knocked on the door, and asked what was happening. Danielle screamed, "Somebody save me. I don't want to die. This bastard is going to kill me. Somebody save me." Robinson heard something bump against a wall and threatened to break a window if defendant did not open the door. When the door opened, Danielle immediately ran out. She was scared and naked and covered with a blanket. Defendant, who was also undressed, came out. Danielle told Robinson to keep defendant away from her and asked him to get her clothes, which he did. Danielle then dressed and ran from door to door seeking help. Some people let her in, and she told them she had just escaped from a man in a trailer who had sexually assaulted her and banged her head. One of them called the police.

---

[2] Petitioner also contends that the trial court's ruling violated his rights to confrontation, to present a defense, and to have a jury decide his guilt beyond a reasonable doubt. As petitioner has articulated only a due process claim, and failed to articulate separate bases for his other constitutional claims, the Court will consider only his due process claim.

7

(Ans., Ex. 7 at 2–3). Later that morning, petitioner talked to a neighbor, William Keller. He told Keller that he picked up a woman the night before. He said that they ended up not having sex because the woman was drunk, and "they fought." Keller later recounted petitioner's statements to an investigating police officer. Petitioner himself told an investigating police officer, Vasquez, that he was unable to communicate with Danielle because she was highly intoxicated, stumbled around his house, and was vomiting, urinating, muttering, and being loud and obnoxious. (*Id.* at 3–4.)

At trial, petitioner asked the trial court to instruct the jury that he was acting in self-defense. Petitioner premised his motion on (1) his statement to Keller that he and Danielle fought, (2) the evidence of physical injuries on his body, and (3) his statements to Officer Vasquez that he could not communicate with the intoxicated, stumbling Danielle. The state appellate court concluded that the trial court reasonably denied this request:

> This evidence does not reasonably support an inference that Danielle initially assaulted [petitioner] or posed a danger of physical harm or that he reasonably feared that he was in imminent danger of physical harm, or that a reasonable person in [petitioner]'s position would have thought so, or that defendant assaulted Danielle only out of necessity to protect himself. Indeed, according to [petitioner], Danielle was so incapacitated that she could not stay safely on a bed or control her bodily functions; he also denied that she touched him. Thus, [petitioner]'s own version of events to Officer Vasquez negated any arguable inference that he acted in self-defense. Moreover, Danielle testified that [petitioner] assaulted her first.

(Ans., Ex. 7 at 26.)

The state appellate court reasonably determined that there was no violation of petitioner's constitutional rights. Although a defendant is entitled to jury instructions that embody his defense theory, due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). Here, there was no evidence to support petitioner's requested instruction. There is no evidence that Danielle struck petitioner or that her behavior was violent or threatening. Rather, she appears to have been incapably drunk. The record being such, there is no evidence on which a jury could conclude that petitioner "(1) reasonably believed he or she was in imminent danger of suffering bodily injury, (2) reasonably believed that the immediate

use of force was necessary to defend against that danger, and (3) used no more force than was reasonably necessary to do so." *See* CALCRIM No. 3470. Accordingly, petitioner's claim is DENIED for want of merit.

### 4.    **Denial of New Trial Motion**

Petitioner filed a motion for a new trial after the jury had rendered its verdict. Petitioner claims that the trial court violated his right to due process when it denied such motion. The motion was premised on allegations that defense counsel had rendered ineffective assistance by refusing to let him testify:

> In his declaration in support of the motion and his testimony at the hearing, [petitioner] said that before and during trial he demanded to testify several times, but defense counsel said he could not because the prosecutor would "tear me apart" on cross-examination and reveal his prior criminal history. He did not respond and kept his mouth shut because he felt counsel was the "boss" and "did what he wanted to do." [Petitioner] claimed that counsel was belligerent and hostile, and he felt trapped, paranoid, afraid and pressured. However, he admitted that he did not testify in his prior manslaughter prosecution, and in this case, he had no difficulty expressing his dissatisfaction with counsel directly to the court and having tried to obtain different counsel. He conceded that he did not at that time say that one reason for his dissatisfaction was that he wanted to testify.
>
> [Petitioner] further asserted that had he testified, he would have been able to refute Danielle's testimony about how she was injured and explain that Danielle was incoherent and unable to communicate, and she repeatedly fell off the bed, vomited and violently attacked him. He said he could have explained that he "was moving away denying sexual contact from [her] and told her to leave" and she "clawed at myself for no reason I caused." He also could have denied wanting to have sex with her.
>
> [Petitioner] admitted that he had prior felony convictions for manslaughter and drunk driving and understood that he could have been impeached had he testified. He also acknowledged that his trial on the charges and prior conviction allegations had been bifurcated so jurors would not learn about his prior convictions.

(Ans., Ex. 7 at 27.) Defense counsel denied having prevented petitioner from testifying:

> He explained that they discussed the topic a number of times before and during trial. He advised [petitioner] about the pros and cons, noting that because the trial was bifurcated the jury would not learn of his two felony convictions unless he testified. He recommended that he not testify but left the choice to him. It remained an open question while the prosecution was presenting its case. Counsel remembered a conversation after the prosecution rested concerning whether the defense would put on evidence. He also had a discussion with [petitioner] when the moment to decide arrived. They had a practice session. In a note about the

9

> meeting, counsel wrote that he '[f]inally convinced [petitioner] not to testify. Explained that if [petitioner] testifies, will become a credibility contest between [petitioner] and victim. And then my opinion nobody will believe [petitioner] and [petitioner] will not succinctly answer my questions or the D.A.'s, for that matter. Explained the D.A. much better at cross-exam than cop. Downside, in other words, what I've explained no self-defense instruction. However, has record for appeal.'
>
> Counsel further explained to [petitioner] that the videotape of [petitioner]'s interview with Officer Vasquez was a better way to present his story than he was going to accomplish at trial, especially because Officer Vasquez was not as aggressive in questioning [petitioner] as the prosecutor would be. Moreover, any contradiction between his explanation of events to Officer Vasquez and his trial testimony would be "disastrous." Counsel stated that [petitioner] agreed to take his advice and let counsel make the call concerning his testimony. When, after other defense witnesses had testified, it was time to make the call in court, [petitioner] did not state or otherwise indicate that he had changed his mind, and counsel announced that the defense would rest.
>
> The issue did, however, come up during final argument. After the prosecutor's opening argument, [petitioner] wrote on a pad, "Would it now look better if I testify" and counsel wrote, "no."
>
> Counsel noted that [petitioner] had not been shy about expressing his views and challenging counsel's approach. He knew that [petitioner] had written to the court, and he advised [petitioner] against doing so.
>
> After hearing from [petitioner] and counsel, the court denied the motion for a new trial.

(Ans., Ex. 7 at 28–29.) The state appellate court rejected petitioner's claims of ineffective assistance: "In denying [petitioner]'s motion, the [trial] court resolved the credibility contest between [petitioner] and counsel in counsel's favor and implicitly found that counsel did not prevent [petitioner] from testifying or otherwise ignore his demand to testify; rather, counsel left the decision to [petitioner], and he accepted counsel's advice and elected not to testify." (*Id.* at 29.) The trial court's determination that defense counsel was credible ends this Court's inquiry. Not only must federal habeas courts accord credibility determinations "the highest deference," *see Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986), they are, under 28 U.S.C. § 2254(e)(1), "presumed to be correct." With this presumption in mind, if, as the trial court held, defense counsel did not prevent petitioner from testifying, petitioner cannot show that counsel's performance was deficient. Petitioner, then, has failed to established ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner has also failed to show any

10

constitutional error in the trial court's denial of his new trial motion.

The Court notes that the trial court's decision is supported by the record. Petitioner had no difficulty expressing himself to the trial court, and there is no evidence of coercion. The trial court found defense counsel persuasive. This Court cannot reassess credibility nor reweigh the evidence. Rather, this Court can only look to see whether the trial court's decision was fairly supported by the record. The Court concludes that it was, and therefore that the state determination comports with constitutional requirements. Accordingly, petitioner's claim is DENIED.

### 5. Assistance of Counsel

Petitioner claims that defense counsel rendered ineffective assistance when he failed to object to the trial court's (1) commenting on the O.J. Simpson case during voir dire, and (2) drawing attention to the fact that petitioner did not testify at trial.

Claims of ineffective assistance of counsel are examined under *Strickland*, cited above. In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 650). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt

respecting guilt." *Id.* at 695.

### A.   O.J. Simpson Comments

The relevant facts are as follows:

> [D]uring voir dire of prospective jurors, the court alluded to the O.J. Simpson case in trying to clarify for a juror the difference between 'not guilty' and 'innocent.' The [trial judge] said, 'Let me use the horrible case, horrible for any number of reasons, including embarrassment to the state of California, the O.J. Simpson case. Jury in that case, well-publicized case, virtually everybody followed it in some sense, but when the jury came back and said that he was not guilty it that case, they were not making a determination that he was innocent of those charges. They were making a determination that his guilt had not been proven beyond a reasonable doubt. [¶] Does that help you any in terms of what we're talking about?'
>
> Later, the court asked a prospective juror, '. . .[W]ere you listening when they went through the hypothetical this morning about the probably guilty defendant, and how did that set with you?' FN9. The juror replied, 'That's interesting, because I was thinking about this at recess, when you talked about the O.J. case.' The court responded, 'I hate to bring it up.' The juror said, 'I know but that's what I thought of.' The court said, 'You can still sense my disgust, but go ahead.' The juror continued, 'I have a hard time figuring out the not guilty verdict and innocent. I don't see that.' The court explained, 'This is really basic to how the system works. Again, we are like beating on a drum over here. [The prosecutor] has to prove the defendant guilty beyond a reasonable doubt. If he doesn't, the jury merely determines that he has failed to carry his burden of proof and so the defendant is not guilty. So with our hypothetical small but reasonable doubt, the defendant is not guilty. Well, that does not equate to a system in another country, wherever, where there actually may be a determination that someone is factually innocent . . . We're not interested in concepts of innocence in American criminal litigation.'
>
> FN9. The court had set up a scenario in which a juror heard all the evidence and instructions and began to deliberate. 'And you got a pretty good idea after this process that [defendant] is probably guilty of exactly what the People are trying to prove. However, there is an explanation available to yourself that makes some sense to you based upon the evidence and the law that points to [defendant] being not guilty, even though that explanation or that rationale is less persuasive to you than the one that he is guilty. If that lesser explanation, no matter how slight it is, is based upon reason, even though you think [defendant] is probably guilty, how do you vote?' A prospective juror answered 'not guilty,' and the court agreed that that was the correct answer.

(Ans., Ex. 7 at 33–34.)  On appeal, petitioner claimed that:

> counsel should have objected because the court's reference to the O.J. Simpson case in effect told jurors that this case was like the Simpson case and "planted the seed" in the jurors' minds that [petitioner] was probably guilty but would have to be set free if the prosecution could not prove guilty beyond a reasonable doubt.

12

> [Petitioner] further argues that the court suggested that the acquittal in the Simpson case was "horrible," and an "embarrassment" and thereby implied that a similar result in this case would be horrible and cause jurors to suffer similar embarrassment.

(*Id.* at 34.) The state appellate court rejected petitioner's ineffective assistance claim. "We find the subtle inferences and hidden messages that [petitioner] conjures from the court's brief references to the Simpson case to be unreasonable":

> Those references played a min[u]scule part in the court's extended effort to explain the concept of "reasonable doubt," describe the sort of doubt the prosecution must eliminate in order to satisfy its burden of proof and obtain a conviction, and then clarify the difference between "not guilty" and "innocent," which some jurors had difficulty understanding. At all times, however, the emphasis and focus of the court's discussion with jurors was on those concepts and making sure that that jurors understood them and agreed to abide by them in determining [petitioner's] guilt. Viewed in light of their obviously illustrative purpose, the court's references were designed to prevent jurors from convicting [petitioner] because they thought he was probably guilty or because the evidence did not clearly establish his innocence.
>
> Having reviewed the pertinent parts of the voir dire in their entirety, we doubt that anyone reasonably could have thought that the court conveyed its personal views about the case and [petitioner's] guilt. Under the circumstances, defense counsel could have reasonably declined to object and seek a cautionary admonition. Indeed, a request for a cautionary instruction was unnecessary because the court expressly told jurors not to take a cue from the court's comments. The court instructed that "[i]t is not my role to tell you what your verdict should be. Do not take anything I said or did during the trial as an indication of what I think about the facts, the witnesses, or what your verdict should be."

(*Id.* at 35–36.)

The state appellate court reasonably determined that petitioner failed to show that defense counsel rendered ineffective assistance. As to the first *Strickland* prong, petitioner fails to show that defense counsel's not objecting constituted a deficient performance. The trial court's comments were illustrative only, meant to convey that the jurors must not determine whether petitioner is innocent, but rather whether the prosecutor proved his guilt beyond a reasonable doubt. Also, the comments were made prior to the presentation of any evidence, and nothing in the comments refers to any evidence, or applies it to petitioner's case. Nor do the comments imply that petitioner is guilty, or should be found guilty, or that petitioner's case is like O.J. Simpson's, or that petitioner is like O.J. Simpson. The record being such, it is reasonable to conclude that defense counsel saw no need to object, and therefore petitioner has not shown that

13

defense counsel's performance was deficient.

As to the second prong of *Strickland*, petitioner has not shown prejudice. The trial court clearly instructed the jury that nothing the court said or did should be taken as the court's opinion of witnesses, evidence, or as to the verdict the jury should reach. This Court must presume that the jurors followed these instructions. *See Richardson*, 481 U.S. at 206. Petitioner has not overcome this presumption, and there is nothing in the record to indicate that the jurors did not adhere to the trial court's instructions. Accordingly, petitioner's claim is DENIED for want of merit.

### B.   Comments Regarding Petitioner Not Testifying

The relevant facts are as follows:

> At the close of the prosecution's case and just before excusing the jury until the next morning, the court stated, 'At that point I expect more evidence from defense, again, not talking about the substance of the evidence, but it will be brief in terms of the time it will take. I expect that I will instruct you on the law tomorrow morning. Counsel will argue the case after the noon break tomorrow, okay. So the evidence part is not going to take terribly long and that will be — I expect that's going to be it. I don't know for sure. For one thing I can't predict or anticipate whether [petitioner] is going to testify or not, okay.'

(Ans., Ex. 7 at 36.) Petitioner claims that the trial court impermissibly commented on his failure to testify, in violation of his Fifth Amendment rights, and that defense counsel's failure to object constituted ineffective assistance. The state appellate court rejected petitioner's interpretation of the trial court's comments as "strained and unreasonable":

> Unmistakably, the entire passage relates to scheduling and represents an effort to provide jurors with information about what to expect the next day. In doing so, the court simply noted that the length of the defense case would depend on whether [petitioner] testified, something he could not predict. In our view, counsel reasonably could have declined to object because the comment does not imply that the court had an opinion one way or the other about whether [petitioner] would testify, let alone whether he should testify. Moreover, even if the court's comments suggested that [petitioner] might not testify, they did not have any reasonable tendency to suggest that the court thought defendant was guilty.

(*Id.* at 36–37.)

A defendant's privilege against self-incrimination is violated when the jury is asked to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as

14

substantive evidence of guilt. *Griffin v. California*, 380 U.S. 609, 615 (1965).

The state court reasonably determined that petitioner was not deprived of his right against self-incrimination or to the effective assistance of counsel. As to the first claim, as the time for petitioner to testify or not testify had not passed, the trial court could not have been asking the jury to draw an adverse inference from a defendant's silence or to treat petitioner's silence as substantive evidence of guilt. As to the second claim, petitioner has failed to show that trial counsel's performance was deficient. Again, as the comments cannot plausibly be taken as a commentary on petitioner's failure to testify, defense counsel had no reason to object. Because it is both reasonable and not prejudicial for an attorney to forego a meritless objection, *see Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), petitioner's claim is DENIED for want of merit.

### 6. **Denial of *Romero* Motion**

Petitioner claims that the trial court violated his right to due process when it denied his motion to strike a prior "strike" conviction under *Romero*. Under *Romero*, a California sentencing court may in its discretion strike a prior felony conviction allegation "in furtherance of justice," an "amorphous concept" requiring the trial court to consider both "the rights of the defendant and the interests of society as represented by the People." *Id.*, 13 Cal. 4th at 507, 530. The state appellate court rejected petitioner's *Romero* claim.

Whether the trial court correctly used its discretion in denying petitioner's *Romero* motion is a matter of state, not federal, law. State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861–62 (2011). Accordingly, petitioner's claim is DENIED.

### CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

Petitioner's motion for "admittance of his entire medical history" (Docket No. 12) is DENIED on grounds that petitioner has not shown why such history is relevant to the legality or duration of his confinement. It appears that petitioner is alleging that the conditions of his confinement are unconstitutional. If petitioner seeks relief on such grounds, he may wish to file a civil rights action.

The Clerk shall enter judgment in favor of respondent, terminate Docket No. 12, and close the file.

**IT IS SO ORDERED**.

DATED: November 14, 2011

SUSAN ILLSTON
United States District Judge